# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SUNRISE HOSPITAL AND MEDICAL CENTER, LLC, et al., | Case No.: 2:23-cv-01986-APG-EJY |
| Plaintiffs | **Order Granting in Part and Denying in Part Defendants' Motions to Dismiss** |
| v. | [ECF Nos. 23; 37] |
| BLUE SHIELD OF CALIFORNIA, INC., et al., | |
| Defendants | |

Sunrise Hospital and Medical Center, LLC, Sunrise MountainView Hospital, Inc., and Southern Hills Medical Center, LLC (collectively the Hospitals) claim they gave medically necessary treatments to four patients that were covered by benefit plans issued by Blue Cross of California and Anthem Blue Cross Life and Health Insurance Company (collectively the Anthem defendants). At least one of those plans was allegedly administered by Keenan and Associates, Inc. The Hospitals claim Keenan and the Anthem defendants refused to reimburse them for the costs of the treatments. The Hospitals sue the Anthem defendants and Keenan for denial of benefits under the Employee Retirement Income Security Act (ERISA), breach of contract, and unjust enrichment.

The Anthem defendants and Keenan move to dismiss, arguing that this court lacks personal jurisdiction over them, that the Hospitals lack standing, that ERISA preempts the Hospitals' state claims, that two patients' claims are time-barred, and that the Hospitals fail to state claims for ERISA violations, breach of contract, and unjust enrichment. The Anthem defendants also move to dismiss for improper venue and argue that certain claims need to be

brought in California Superior Court or arbitrated.  Keenan also argues that it is a third-party administrator, so the Hospitals cannot bring a claim against it for denial of benefits.

The Hospitals respond that this court has personal jurisdiction over the defendants because ERISA authorizes nationwide service of process, that they have standing to as the patients' assignees, that their claims are not time-barred, that they bring the state claims in the alternative, and that they plausibly state their claims.  They also respond that venue is proper because the hospitals where the patients received care are in this district, and the California Superior Court and arbitration arguments are based on documents that I should not consider. The Hospitals argue that they plausibly allege that Keenan denied one of their claims itself, so they can properly sue it for an ERISA benefits claim.

I deny the defendants' motions to dismiss except the claim for unjust enrichment involving Patient #1, which I dismiss as time-barred.  I deny the remainder of the motions to dismiss because I have personal jurisdiction over the defendants, this is a proper venue for this suit, the Hospitals can plead state claims in the alternative, and the Hospitals plausibly state their claims.

## I.      Background

Sunrise, MountainView, and Southern Hills hospitals provided medical care to four patients with health plans provided by the Anthem defendants.  The Hospitals have a facility agreement with Rocky Mountain Hospital and Medical Service, Inc. d/b/a HMO Nevada (Anthem NV). ECF No. 14 at 4.  This agreement specifies the terms and conditions under which the Hospitals treat patients with any Blue Cross and Blue Shield (BCBS) health plan and how they will be reimbursed for that treatment. *Id.*  Under the facility agreement, when the Hospitals treat a patient insured by a non-Anthem NV BCBS plan, Anthem NV reviews the claim,

determines the amount payable under the facility agreement, and forwards the claim to the local BCBS health plan that covers the patient. *Id.* at 4-5.  The patient's home plan applies the patient's benefits, makes coverage determinations, and either denies or approves payment for the services the Hospitals provided. *Id.* at 5.  The home plan sends its decision to Anthem NV, which sends the home plan's decision and payment to the Hospitals. *Id.*  The payment rates specified in the facility agreement govern the Hospitals' reimbursement amounts, no matter where the patient's home BCBS plan is located. *Id.*

The Hospitals sue on behalf of four patients: Patient #1, C.C.; Patient #2, P.U.; Patient #3, I.F.; and Patient #4, G.H. *Id.* at 5-11.  The Hospitals allege that the medical treatment they provided all four patients was medically necessary so they are entitled to full reimbursement under the facility agreement's terms. *Id.* at 5-16.  They also allege that they appealed each claim twice through the proper administrative review process before suing the defendants, and that the defendants denied all claims as not medically necessary, affirming these decisions on appeal. *Id.* at 6-12.  The Hospitals allege that the defendants also failed to reimburse them for preapproved services, which is not allowed under the facility agreement barring a provider's material misrepresentation or omission, which the Hospitals argue they did not do. *Id.* at 6.

The Hospitals bring ERISA denial of benefits claims against the Anthem defendants and Keenan, alleging that the patients belonged to employer-sponsored health plans governed by ERISA and administered or underwritten by the Anthem defendants. *Id.* at 12-13.  They also allege that Patient #1's health plan was administered by Keenan. *Id.* at 3, 5-7.  The Hospitals allege that all four patients assigned their rights and benefits under ERISA to the Hospitals by signing a Conditions of Admission form, allowing the Hospitals to bring this denial of benefits claim on their behalf. *Id.* at 13.  The Hospitals also sue the Anthem defendants and Keenan for

breach of contract for any health care plans not covered by ERISA and for unjust enrichment in the alternative to their breach of contract claims. *Id.* at 13-15.

## II.    Analysis

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe them in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).

To defeat a motion to dismiss, a plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.  Instead, the complaint must include "a short and plain statement of the claim" that shows the plaintiff  "is entitled to relief" and gives the defendants "fair notice of what the claim is and the grounds upon which it rests." *Id.* at 555 (simplified).  I first evaluate the arguments the Anthem defendants and Keenan assert against the claims of all four patients, then the arguments addressing the claims of individual patients.

### a.  *All Four Patients*

#### i.  *Exhibits*

Keenan attaches two exhibits to its motion to dismiss: (1) the Prime Healthcare Services Summary Plan Description, and (2) the Third-Party Administration Services Agreement between Prime Healthcare Services, Inc. and Keenan & Associates. ECF Nos. 23-1; 23-2.  Keenan contends that Exhibit 1 is Patient #1's healthcare plan.  The Anthem defendants attach three exhibits to their motion to dismiss: (1) a PERS*Choice* Basic Plan Evidence of Coverage, (2) a

Los Angeles County Employees Retirement Association Plan, and (3) an Evidence of Coverage Anthem PPO document. ECF Nos. 37-1; 37-2; 37-3.  The Anthem defendants assert that Exhibit 1 is Patient #3's health care plan, Exhibit 2 is Patient #4's health care plan, and Exhibit #3 is Patient #2's health care plan.  The Anthem defendants ask me to treat these health care plans as incorporated by reference in the first amended complaint (FAC), arguing that they are referenced extensively throughout the FAC and form the basis of the Hospitals' claims against them.

The Hospitals urge me to not consider these exhibits at the motion to dismiss stage.  They argue that the documents are not incorporated by reference in the FAC because it only briefly references the patients' health plans but does not include details on specific provisions.  They also argue that they did not have access to these health care plan documents before the defendants attached them to the motions to dismiss.  They argue that if I consider the documents, I should convert the motion into a motion for summary judgment and grant them the opportunity to conduct discovery.

If I consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss, I normally must convert the motion into one for summary judgment and "must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice— without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.  A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.*  Documents not attached to the complaint may also be considered "if the documents' authenticity is not contested

and the plaintiff's complaint necessarily relies on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (simplified).

I do not consider the documents Keenan and the Anthem defendants attach to their motions to dismiss in ruling on their motions.  First, Keenan does not argue why I should consider its exhibits at this stage when exhibits are not typically considered with a motion to dismiss.  Additionally, the documents describe "Prime Healthcare Services," which is not mentioned in the FAC.  Keenan does not point me to any portions of Exhibit 1 that indicate this is Patient #1's health plan nor to any portions of Exhibit 2 that indicate this document codifies the relationship between Keenan and the Anthem defendants.  While the Anthem defendants argue that their exhibits are incorporated by reference in the FAC, they similarly do not point me to any place in the exhibits that indicates these documents are the health care plans of Patients #2, #3, and #4.  Because these documents are not tied to the patients on their face, and the defendants have not authenticated them as belonging to the patients, I cannot find that the Hospitals necessarily referred to or relied on these documents in their FAC.  The Hospitals also argue they had not seen these documents prior to the defendants' motions to dismiss.  So, I decline to consider these documents at this stage.

ii. *Personal Jurisdiction*

Keenan and the Anthem defendants argue that this court lacks both general and specific personal jurisdiction over them.  They argue that there is no general jurisdiction because neither Keenan nor the Anthem defendants are "at home" in Nevada, being incorporated in California and having their principal places of business there.  They also argue this court lacks specific personal jurisdiction because their cooperation with Anthem NV is insufficient to establish jurisdiction, they did not transact business with a Nevada resident, they evaluated the patients'

claims in California, and they issued the patients' insurance plans in California. Keenan

additionally argues that it was only a third-party administrator for Patient #1's claims, making its

connection to Nevada even more tenuous.

The Hospitals respond that ERISA provides for nationwide service of process, making

the relevant personal jurisdiction inquiry whether the defendant had minimum contacts within

any district of the United States. The Hospitals argue that I can exercise pendent personal

jurisdiction over the state claims because they relate to the defendants' alleged nonpayment of

health insurance benefits.

Keenan replies that ERISA provides for nationwide service of process only for breach of

fiduciary duty claims, not wrongful denial of benefits claims. The Anthem defendants reply that

it "had nothing to do with the claims for Patient #1" and Patients #3 and #4 are not governed by

ERISA, so "ERISA's nationwide service of process provision does not apply" to them with

respect to the claims for Patients #1, #3, and #4. ECF No. 54 at 4-5. Additionally, they argue

that this court cannot exercise pendent personal jurisdiction over the state claims for Patients #3

and #4 because their claims are based on factual circumstances unrelated to the other patients'

ERISA claims.

"The exercise of personal jurisdiction must accord with constitutional principles

of due process . . . and comport with traditional notions of fair play and substantial

justice." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir.

2004) (quotations omitted). Typically, these due process requirements are satisfied if the

forum state has minimum contacts with a defendant. *Id.* However, "when a statute

authorizes nationwide service of process, [a] national contacts analysis is appropriate"

and the minimum contacts inquiry becomes "whether the defendant has acted within any

1    district of the United States or sufficiently caused foreseeable consequences in this

2    country." *Id.* (simplified).  The ERISA statute authorizes nationwide service of process.

3    *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); 29 U.S.C.

4    § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the

5    United States, it may be brought in the district where the plan is administered, where the

6    breach took place, or where a defendant resides or may be found, and process may be

7    served in any other district where a defendant resides or may be found.").  So, personal

8    jurisdiction may be established over a defendant in an ERISA case if the defendant was

9    personally served within the United States and had minimum contacts within the United

10   States.[1]

11         The Anthem defendants and Keenan were personally served within the United

12   States. ECF Nos. 3; 27; 28.  They are incorporated in California and have their principal

13   places of business in California so they have minimum contacts with the United States.

14   ECF Nos. 14 at 2-3; 23 at 2; 37 at 8; 39 at 2; 40 at 2.  Thus, the exercise of personal

15   jurisdiction over the Hospitals' ERISA claims against the defendants is proper.  While the

16   defendants argue that ERISA does not provide for nationwide service of process for

17   wrongful denial of benefits claims, this argument is not supported by the statute. *See* 29

18

19   [1] *See Cripps*, 980 F.2d at 1263-64, 1267 (finding that, in an ERISA action, serving a defendant in
     Massachusetts conferred personal jurisdiction over the defendant in the Southern District of
20   California); *Sunrise MountainView Hosp., Inc. v. Blue Cross Blue Shield Healthcare Plan of
     Ga., Inc.*, No. 2:23-CV-00992-MMD-BNW, 2024 WL 3299987, at *2 (D. Nev. Mar. 7, 2024)
21   (finding that defendant incorporated in and with its principal place of business in Georgia had
     minimum contacts with the United States and could be sued in an ERISA enforcement action in
     the District of Nevada); *MSC/Premera Blue Cross, Plan Adm'r of Colortyme Emp. Benefit Plan
22   v. Pedroza*, No. 3:05-CV-00689-BES-RAM, 2007 WL 9728977, at *3 (D. Nev. Dec. 11, 2007)
     ("[W]here, as here, an action is brought to enforce the terms of a benefit plan under section
23   1132(e)(2), the question is whether process has been properly served and the defendant has
     minimum contacts with the United States.").

1  U.S.C. § 1132(e)(2).  So, I can properly exercise personal jurisdiction over the Anthem

2  defendants and Keenan for the Hospitals' ERISA claims.

3          As for the state law claims, a federal district court can assert pendent personal

4  jurisdiction over a defendant for "a claim for which there is no independent basis of

5  personal jurisdiction so long as it arises out of a common nucleus of operative facts with

6  a claim in the same suit over which the court does have personal jurisdiction." *Action*

7  *Embroidery Corp.*, 368 F.3d at 1180.  Courts typically exercise pendent personal

8  jurisdiction where a plaintiff brings a federal claim "for which there is nationwide

9  personal jurisdiction . . . in the same suit with one or more state or federal claims for

10 which there is not nationwide personal jurisdiction." *Id.* at 1180–81.  I thus can properly

11 exercise pendant personal jurisdiction over the Hospitals' state law claims against the

12 Anthem defendants and Keenan because they are based on the same nucleus of operative

13 facts as the ERISA claims and brought in the alternative to the ERISA claims.

14              iii.   *Standing*

15         The Anthem defendants and Keenan argue that the Hospitals have standing to enforce the

16 patients' insurance benefits only if the patients validly assigned their rights to the Hospitals.

17 Keenan argues that Patient #1 could not do this because Keenan administers plans that

18 "expressly prohibit the assignment of . . . contractual rights." ECF No. 23 at 11.  The Anthem

19 defendants argue that all four patients' plans contain anti-assignment provisions, voiding any

20 alleged assignments the patients made to the Hospitals.  The Hospitals respond that they

21 plausibly alleged that the patients validly assigned them their insurance benefits, which includes

22 the ability to enforce those benefits.  They also argue that the defendants waived their right to

23 enforce any anti-assignment clauses by failing to invoke those rights during the administrative

appeals process.  The defendants reply that I should incorporate by reference the patients' health care plans that contain anti-assignment provisions.

"[A]n assignment of the right to benefits generally includes the right to sue for nonpayment of benefits." *S. Coast Specialty Surgery Ctr., Inc. v. Blue Cross of Cal.*, 90 F.4th 953, 960 (9th Cir. 2024).  But "[a]nti-assignment clauses in ERISA plans are valid and enforceable." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296-97 (9th Cir. 2014).  Insurance plan administrators can waive anti-assignment provisions by failing to raise them as "a reason for a benefits denial during the administrative process and then rais[ing] that reason for the first time when the denial is challenged in federal court" if the insurance plan administrator knew that the healthcare provider "requested payment pursuant to a clear and unambiguous assignment." *Id.* at 1297 (quotations omitted).

As explained above, I am not considering the defendants' exhibits at this stage, so I do not consider the documents that contain the purported anti-assignment clauses.  The Hospitals have plausibly alleged that the patients assigned their insurance benefits to the Hospitals by signing the Conditions of Admission. ECF No. 14 at 13.  Even if I considered the documents with the anti-assignment provisions, questions of fact exist regarding whether the Anthem defendants and Keenan waived any anti-assignment provisions by failing to raise the issue during the administrative appeals process and whether the defendants knew that the Hospitals were seeking payment as the patients' assignees.  Thus, those issues are not suitable for resolution at this stage of the proceedings.

In its reply, Keenan raises for the first time the argument that the Hospitals lack Article III standing because they have not asserted that the patients themselves were injured.  "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v.*

*Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  However, "[l]ack of Article III standing is a non-waivable jurisdictional defect that may be raised at any time." *Renee v. Duncan*, 686 F.3d 1002, 1012 (9th Cir. 2012).  Keenan's argument fails on the merits.  "[I]t is black-letter law that an assignee has the same injury as its assignor for purposes of Article III." *Spinedex*, 770 F.3d at 1291.  Numerous cases have rejected the argument that a patient-assignor who is never billed by their healthcare provider lacks Article III standing when they had the legal right to seek payment from their insurance providers for charges from providers at the time of the assignment. *See id.* at 1288-91 (collecting cases and finding that the provider did not lack Article III standing where it stood in the shoes of patients who had the right to seek payment from insurance providers at the time of the assignment, "and if payment had been refused, . . . would have had an unquestioned right to bring suit for benefits.").  Keenan has not explained how the patients' situation here differs from the *Spinedex* patients or why the Hospitals and the patients do not have the same injury for  Article III purposes.  I decline to dismiss the Hospitals' claims for lack of Article III standing.

### iv.   *ERISA Preemption of State Claims*

Keenan and the Anthem defendants argue that the Hospitals' breach of contract and unjust enrichment claims are preempted by ERISA because (1) they are brought derivatively on behalf of individual patients and (2) there is no other independent legal duty implicated by the defendants' actions.  The Hospitals argue that they are bringing the breach of contract claim only for plans not subject to ERISA and unjust enrichment in the alternative to their breach of contract claims.  They argue that they will not know what plans are governed by ERISA until they conduct discovery.  In response, the Anthem defendants argue that the Hospitals now have the patients' insurance plans so they now know which plans are governed by ERISA.  They also

argue that there is no discovery in ERISA actions, that this case will be determined on the administrative record, and that there is no right to plead state claims in the alternative when ERISA applies.

"ERISA's express preemption clause provides that ERISA preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' governed by ERISA . . . ." *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999) (quoting 29 U.S.C. § 1144(a)).  But "ERISA does not preempt the claims of parties who do not have the right to sue under ERISA because they are neither participants in nor beneficiaries of an ERISA plan." *Miller v. Rite Aid Corp.*, 504 F.3d 1102, 1106 (9th Cir. 2007).

Under Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  Courts have frequently upheld alternative pleading in the ERISA context where parties do not yet know whether the plans in question are governed by ERISA. *See, e.g. Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1121 (E.D. Cal. 2003) (allowing ERISA and state law claims to proceed past the motion to dismiss stage where the court had not yet determined whether ERISA applied); *Efimenko v. Catalina Mktg. Corp. Grp. Life Plan,* No. 21-CV-01550-HSG, 2022 WL 799081, at *5 (N.D. Cal. Mar. 16, 2022) ("Courts have permitted alternatively-pled claims to proceed at the motion to dismiss stage even in the context of ERISA, finding that Rule 8 protects plaintiffs from being forced to hazard a guess between alternative theories before discovery clarifies the relevant facts." (quotation omitted)).

As stated above, I am not considering the defendants' exhibits at this time.  Further factual development is necessary to determine whether the patients' health insurance plans are

1 governed by ERISA.  Because the Hospitals bring these state law claims in the alternative for

2 plans not governed by ERISA, I decline to dismiss them as preempted.

3                         v.  *Failure to State an ERISA Claim*

4         Keenan and the Anthem defendants argue that the Hospitals fail to state an ERISA claim

5 because they have not identified the provisions of the insurance plans that entitle the Hospitals to

6 reimbursement.  The Anthem defendants also argue that the FAC does not contain any specific

7 allegations as to the Anthem defendants and does not make clear which defendant it wants to

8 hold liable for each claim.  The Hospitals respond that they have adequately pleaded facts

9 sufficient to state an ERISA claim, as they pleaded that they provided medically necessary

10 covered service to the patients, which the defendants did not reimburse.  Keenan and the Anthem

11 defendants reply that to state an ERISA claim for benefits the Hospitals must allege details about

12 the particular benefits the Hospitals are due under the health insurance plans' terms.  The

13 Anthem defendants reply that even if the Hospitals did not have the plans before, they have them

14 now and need to assert which sections of the plans the defendants breached.

15         To plead an ERISA claim for denial of benefits, a plaintiff must allege what benefit was

16 due under the plan's terms and that the plaintiff was denied that benefit. *See* 29

17 U.S.C. § 1132(a)(1)(B); *Sunrise MountainView Hospital*, 2024 WL 3299987, at *4.  The

18 Hospitals have plausibly alleged that the particular benefit at issue is the payment for medically

19 necessary services, a benefit assigned to the Hospitals by the patients. ECF No. 14 at 13.

20 Because the defendants never paid the Hospitals, the Hospitals never received this benefit, so

21 they have plausibly alleged an ERISA denial of benefits claim. *Id.* at 7, 9, 11, 12.

22 / / / /

23 / / / /

13

vi. *Failure to State a Breach of Contract Claim*

The Anthem defendants and Keenan argue that the Hospitals fail to state a breach of contract claim.  First, the defendants argue that the anti-assignment provisions in the health insurance plans precluded the patients from assigning their benefits and rights to the Hospitals, so the Hospitals cannot bring a breach of contract claim on behalf of the patients.  They also argue that the FAC does not allege that the patients themselves suffered any damages.  The Anthem defendants specifically argue that the Hospitals fail to state a breach of contract claim against them for Patient #1 because there are no allegations that the Anthem defendants were ultimately responsible for denying Patient #1's benefits.  The Hospitals respond that they have adequately pleaded that there was a contract among Keenan, the Anthem defendants, and the patients; that the Hospitals had standing to enforce the terms of this contract as the patients' assignees; and that the defendants breached these contracts by not paying the Hospitals for the medically necessary services they rendered.

To state a breach of contract claim, the plaintiff must plausibly allege "(1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages." *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. Ct. App. 2022) (citing *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006)).  "Relating to damages, a plaintiff must prove both (1) a causal connection between the defendant's breach and the damages asserted, and (2) the amount of those damages." *Id.*

The FAC plausibly states a claim for breach of contract.  The Hospitals allege that a valid contract existed between the patients and the defendants as their insurance providers, that the patients assigned their benefits and rights under those contracts to the Hospitals, that the

defendants breached those contracts by not paying for the medically necessary care the Hospitals provided to the patients, and that the defendants' failure to pay caused over $100,000 of damage to the Hospitals. ECF No. 14 at 4-5, 6-7, 9, 11, 12, 14.

*vii.   Failure to State an Unjust Enrichment Claim*

Keenan moves to dismiss the unjust enrichment claim, arguing that the Hospitals did not confer a benefit on it because it is a third-party administrator that does not have an obligation to provide healthcare services.  Keenan argues that because it has no obligation to provide medical services to Patient #1, and it did not request that the Hospital provide medical services to Patient #1, the Hospitals did not confer a benefit on Keenan.  The Hospitals respond that Patient #1's medical treatment was both medically necessary and pre-approved, so the Hospitals conferred at least an indirect benefit on Keenan.

The Anthem defendants also move to dismiss the unjust enrichment claims, arguing that the Hospitals "cannot plead that the Anthem Defendants realized any benefit when Plaintiffs also plead that the claims were not medically necessary and the Anthem Defendants did not accept any benefit." ECF No. 37 at 16.  The Hospitals respond that "Anthem incorrectly states that the Hospitals pled that the claims were *not* medically necessary" when "[t]he FAC plainly states that Hospitals provided *medically necessary services* to all the Patients . . . and in the case of Patient No.1, C.C., received *pre-authorization* to perform such services." ECF No. 49 at 14.  The Hospitals argue that, accepting the FAC's allegations as true, the Hospitals conferred at least an indirect benefit on the Anthem defendants by providing medically necessary health care services to the patients.  It also argues that a claim for unjust enrichment is proper as a claim in the alternative to breach of contract as the Hospitals were not direct parties to the contracts between the Anthem defendants and the patients.

15

"Unjust enrichment has three elements: the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (Nev. 2021) (en banc) (quotation omitted).  The benefit conferred on a defendant may be indirect. *Topaz Mut. Co. Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992).

The FAC plausibly alleges that the Hospitals conferred a benefit on the defendants by providing necessary medical care to the defendants' insureds (the patients), the defendants appreciated the benefit as the Hospitals completed the defendants' administrative exhaustion process, and the defendants are inequitably retaining the benefit by not paying the Hospitals for their services. ECF No. 14 at 5-12.  The Hospitals have plausibly alleged an unjust enrichment claim against Keenan and the Anthem defendants.

> viii.   *Improper Venue*

The Anthem defendants argue that venue is improper because neither the general nor ERISA-specific venue provisions establish that venue is proper in this court.  They argue that because none of the defendants resides in Nevada, the home insurance plans were not located in Nevada, and they are not subject to personal jurisdiction here, the general venue provision does not establish that venue is proper.  Additionally, the Anthem defendants argue that the ERISA venue provisions do not establish that venue is proper here as none of the policies was administered in Nevada, no breach occurred in Nevada, and neither of the Anthem defendants may be "found" in Nevada.

The Hospitals respond that venue is proper under the general venue provision because a substantial part of the events giving rise to their claims occurred in Nevada, where the patients

1 received the medical treatment.  They also argue that venue is proper under the ERISA venue

2 provision because the breach took place in Nevada, where the Hospitals were supposed to

3 receive their payments.  The Anthem defendants reply that venue is not proper because they did

4 not contract to perform in Nevada.

5       The general statutory venue provision states that

> [a] civil action may be brought in (1) a judicial district in which any defendant
> resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of the
> action is situated; or (3) if there is no district in which an action may otherwise be
> brought as provided in this section, any judicial district in which any defendant is
> subject to the court's personal jurisdiction with respect to such action.

10 28 U.S.C. § 1391(b).  ERISA actions "may be brought in the district where the plan is

11 administered, where the breach took place, or where a defendant resides or may be

12 found." 29 U.S.C. § 1132(e)(2).  Some courts interpret "where the breach took place" to

13 be where payment is due, while others find it is where the health insurance plan makes

14 the challenged decision. *See, e.g. Mem'l Hermann Hosp. Sys. v. Boyd Gaming Corp.*

15 *Percs Plan,* No. CIV. H-06-3570, 2007 WL 624334, at *3 (S.D. Tex. Feb. 22, 2007)

16 (collecting cases).  And among courts that interpret where the breach took place to mean

17 where payment is due, there is also a split regarding whether venue is proper where the

18 beneficiary or the assignee was to receive benefits. *See Angel Jet Servs., L.L.C. v. Red*

19 *Dot Bldg. Sys.'s Emp. Ben. Plan,* No. CV-09-2123-PHX-GMS, 2010 WL 481420, at *3

20 (D. Ariz. Feb. 8, 2010) (collecting cases).

21       The ERISA venue "provision is intended to expand, rather than restrict, the range

22 of permissible venue locations." *Varsic v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 607 F.2d

23

245, 248 (9th Cir. 1979).  Venue thus may be established in ERISA actions through either the general venue provision or ERISA's venue provision.[2]

Venue in this district is proper under both the general venue provision and the ERISA venue provision.  A substantial part of the events giving rise to the Hospitals' claims took place in Nevada because the Hospitals are located in Nevada and all of the patients received their medical care in Nevada, so venue can be established through the general federal venue statute.  Venue is also proper under the ERISA statute because the breach occurred in Nevada: it is where the patients received the care for which benefits were due and where the Hospitals would have received payment as the patients' assignees, and this nonpayment is what caused the injury. *See Foster G. McGaw Hosp. of Loyola Univ. of Chicago v. Pension Tr. Dist. #9 Welfare Tr. I.A. of M.A.W.*, No. 92 C 4361, 1992 WL 309571, at *3-4 (N.D. Ill. Oct. 22, 1992) (finding that venue was proper where the hospitals were located and denied ERISA payments as a patient's assignee); *Cole v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 225 F. Supp. 2d 96, 98 (D. Mass. 2002) (finding that statutory interpretation and congressional intent favor finding where the breach took place to be the place where payment is due).  Because the Hospitals plausibly allege that the patient/beneficiaries validly assigned their rights to the Hospitals, and the patients are not parties to this action, I consider where the Hospitals

---

[2] *See Bohara v. Backus Hosp. Med. Benefit Plan,* 390 F. Supp. 2d 957, 960 (C.D. Cal. 2005) (stating in reference to an ERISA case, "[t]he venue rules appear in the general venue statute (28 U.S.C. § 1391), in special venue statutes, and in the improper venue and change of venue provisions"); *Bryant v. Matrix Tr. Co., LLC*, No. 1:16-CV-00559-EJL-REB, 2018 WL 4372943, at *10 (D. Idaho Feb. 20, 2018) (evaluating venue in an ERISA case under both 29 U.S.C. § 1132(e) and 28 U.S.C. § 1391(b)); *but see Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1164 (C.D. Cal. 2015) (stating "a  specific venue provision will control over a general provision" and applying the ERISA venue provision instead of the general venue provision.).

1 would have been paid to be where the breach occurred. *See Cole*, 225 F.Supp. 2d at *98

2 (explaining that "[i]f the place of breach were the place where benefits were denied, the

3 place of breach would always be the place where the plan is administered . . . mak[ing]

4 the first two venue options in § 1132(e)(2) coextensive.")

     **b.   *Patient # 1 (C.C.)***

         i.   *Time barred*

7      According to the FAC, Patient #1 (C.C.) was admitted to Sunrise Hospital on March 29,

8 2017 for a surgery previously authorized by the Anthem defendants. ECF No. 14 at 5-6.  Sunrise

9 submitted a claim for reimbursement on April 5, 2017, and the claim was denied on June 19,

10 2017 "due to C.C.'s diagnoses purportedly not being covered." *Id.* at 6.  Sunrise submitted a first

11 level appeal on September 20, 2017 that the Anthem defendants denied on November 22, 2017.

12 *Id.* at 6-7.  On November 30, 2017, the Anthem defendants directed Sunrise to contact Keenan

13 for further information about the claim. *Id.* at 7.  On December 26, 2017 Sunrise submitted a

14 second level appeal which Keenan denied on March 7, 2018 "due to a purported lack of medical

15 necessity." *Id.*

         A.   ERISA and Breach of Contract

17      The defendants argue that Patient #1's ERISA and breach of contract claims are time-

18 barred because her insurance plan included a limitation period of three years to file a claim, and

19 Patient #1's claim was filed two years after the limitation period expired.  The Anthem

20 defendants also argue that even if I do not consider the three-year limitation period, Patient #1's

21 claim is barred by Nevada's six-year statute of limitations for written contract claims.  The

22 Anthem defendants argue that Patient #1's claim accrued at the latest when she submitted her

23 second and final appeal on December 26, 2017.  They also argue that because the Anthem

1 defendants were first added to this lawsuit in the FAC filed on January 4, 2024, and because they

2 had no prior knowledge of the suit, the claims against them do not relate back to the filing of the

3 original complaint for statute of limitations purposes.

4       The Hospitals respond that the defendants' arguments about the three-year limitation

5 period are wholly based on their exhibits, which I should not consider, so I should apply the six-

6 year limitation period.  They also argue that they did not know about the three-year limitation

7 period prior to the defendants' motions to dismiss.  And they argue that the defendants waived

8 the three-year limitation period by not raising it during the appeals process.  They also argue that

9 Patient #1's claims are timely because her second appeal was denied on March 7, 2018 and they

10 filed their FAC less than six years later, in January 2024.  Keenan replies that insurers are not

11 required to inform plan participants of specific time limits included in their plan, and that the

12 Hospitals' breach of contract claim accrued as soon as the Hospitals knew, or should have

13 known, that the defendants allegedly breached their contract.

14       I can dismiss a claim as "barred by the applicable statute of limitations only when the

15 running of the statute is apparent on the face of the complaint. . . . [and] it appears beyond doubt

16 that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von

17 Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)

18 (quotations omitted).  There is no specific federal statute of limitations governing claims for

19 benefits under an ERISA plan. *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins.*

20 *Program*, 222 F.3d 643, 646–47 (9th Cir. 2000) (en banc).  I "therefore look to the most

21 analogous state statute of limitations." *Id.*  State statutes of limitations for claims based on

22 written contracts provide "the applicable statute of limitations for an ERISA cause of action

23 based on a claim for benefits under a written contractual policy." *Id.* at 648.  Nevada has a six-

1    year statute of limitations for "[a]n action upon a contract . . . founded upon an instrument in

2    writing." Nev. Rev. Stat. § 11.190(1)(b).  However, "[a]bsent a controlling statute to the

3    contrary, a participant [in an ERISA plan] and a[n ERISA] plan may agree by contract to a

4    particular limitations period, even one that starts to run before the cause of action accrues, as

5    long as the period is reasonable." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105-

6    06 (2013).

7         "[A]n ERISA cause of action accrues either at the time benefits are actually

8    denied, . . . or when the insured has reason to know that the claim has been denied." *Wetzel*, 222

9    F.3d at 649.  A claimant has reason to know that their claim has been denied "when the plan

10   communicates a clear and continuing repudiation of a claimant's rights under a plan such that the

11   claimant could not have reasonably believed but that his [or her] benefits had been finally

12   denied." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1188 (9th Cir. 2010) (quotation

13   omitted).  "[A]n action for breach of contract accrues as soon as the plaintiff knows or should

14   know of facts constituting a breach." *Bemis v. Est. of Bemis*, 967 P.2d 437, 440 (Nev. 1998).

15        As explained above, I do not consider the plans that the defendants attach to their motions

16   to dismiss at this stage in the litigation.  Taking the allegations in the FAC as true and viewing

17   them in the light most favorable to the Hospitals, it is not clear from the face of the complaint

18   that Patient #1's ERISA and contract claims are time barred.  It is plausible that Sunrise Hospital

19   did not have reason to know that Patient #1's claim had been denied until it received Keenan's

20   final decision denying the second appeal on March 7, 2018. *See Withrow v. Halsey*, 655 F.3d

21   1032, 1036 (9th Cir. 2011) (finding that plaintiff's benefits were denied for ERISA statute of

22   limitations purposes when she was informed that her appeal was denied).  According to the FAC,

23   the Hospitals received the final denial of Patient #1's claim on March 7, 2018 and they filed the

1  FAC less than six years later, on January 4, 2024, so it is not clear from the face of the FAC that

2  their claim is time-barred.  Similarly, the Hospitals have plausibly alleged that they did not have

3  reason to know that the defendants breached their insurance contracts until they received the

4  final denial on appeal, so it is not clear from the face of the FAC that the breach of contract claim

5  is untimely.

B.  Unjust Enrichment

7  The defendants argue that the Hospital's unjust enrichment claim is time-barred by

8  Nevada's four-year statute of limitations.  They also argue that the three-year limitation period

9  from Patient #1's plan applies to the unjust enrichment claim, so the claim is also untimely under

10  the plan.  The Hospitals do not respond to the defendants' arguments that the unjust enrichment

11  claim for Patient #1 is time-barred.

12  Because the Hospitals did not respond to this argument, they consent to me granting the

13  motion to dismiss on this ground.  LR 7-2(d).  Moreover, "[t]he statute of limitation for an unjust

14  enrichment claim is four years." *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011)

15  (en banc) (citing Nev. Rev. Stat. § 11.190(2)(c)).  It is clear from the face of the FAC that the

16  Hospitals' unjust enrichment claim against the defendants for Patient #1 is time-barred.  Even

17  using the date of the final decision of the Hospitals' last appeal, March 7, 2018, the limitation

18  period ended in 2022 and the Hospitals did not file the first complaint in this case until more than

19  4 years later in 2023.  Because the Hospitals did not make any arguments regarding tolling or

20  some other reason to extend the limitation period, I dismiss the Hospitals' claim for unjust

21  enrichment on behalf of Patient #1 against the Anthem defendants and Keenan with prejudice as

22  time-barred.

23  / / / /

ii.   *Third Party Administrator*

Keenan argues that the Hospitals cannot bring an ERISA claim against it for denial of benefits because it is a third-party administrator that does not have the authority to resolve benefits claims.  The Hospitals respond that this argument is based on the exhibits Keenan attaches, which I should not consider, and they have alleged sufficient facts to plausibly state a claim that Keenan had authority to resolve benefits claims, specifically alleging that Keenan denied their second appeal of Patient #1's claim.

An ERISA action for the recovery of benefits may be brought "by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1).  As stated above, I am not considering the documents the defendants attached to their motions at this stage.  Viewing the facts in the FAC in the light most favorable to the Hospitals, they plausibly allege that Keenan had the power to resolve benefits claims as they allege that Keenan denied the Hospitals' second appeal of Patient #1's claim. ECF No. 14 at 7.

**c.   *Patient # 2 (P.U.)***

Patient #2 came to the MountainView Hospital's emergency department on May 5, 2021 with shortness of breath, was treated for a variety of symptoms, and was discharged on May 14, 2021. ECF No. 14 at 7-8.  MountainView submitted a claim to Anthem NV for reimbursement for its services on June 8, 2021. *Id.* at 8.  According to the FAC, on May 7, 2021 and May 18, 2021, the Anthem defendants denied MountainView's claim, citing a lack of medical necessity.[3] *Id.*  MountainView submitted its first appeal on July 13, 2021, which was denied on September

---

[3] It appears that these dates are incorrect as the Anthem defendants are described as denying the claim before MountainView submitted one.

1  9, 2021, and it submitted its second appeal on October 4, 2021, which was denied on November

2  10, 2021. *Id.*

3       The Anthem defendants move to dismiss the Hospitals' claims on behalf of Patient #2 as

4  time-barred.  They argue that the plan covering Patient #2 contains a one-year limitation period,

5  which expired before the Hospitals filed this case.  The Hospitals respond that this argument

6  depends on exhibits that I should not consider, and that the Hospitals' claims for Patient #2 are

7  timely under the applicable Nevada statute of limitations.  In reply, the defendants argue that

8  ERISA claims accrue when the claim is initially denied.

9       Because I am not considering the defendants' exhibits, I apply the applicable Nevada

10  statutes of limitations, which are six years for the ERISA and breach of contract claims and four

11  years for unjust enrichment. *See Wetzel,* 222 F.3d at 646-49; Nev. Rev. Stat. § 11.190(1)(b); *In*

12  *re Amerco*, 252 P.3d at 703.  An ERISA claim accrues when the claim has been finally denied

13  and a breach of contract claim accrues when the plaintiff knows or should know the contract was

14  breached. *See Wise*, 600 F.3d at 1188; *Bemis*, 967 P.2d at 440.

15       It is not clear from the face of the FAC that Patient #2's claims are time-barred.  The

16  FAC plausibly alleges that their claims accrued in 2021, when the defendants finally denied this

17  claim, and the Hospitals filed the FAC less than four years later in 2024.

18       **d.  *Patient # 3 (I.F.)***

19       The Anthem defendants argue that the health plan for Patient #3 is governed by the

20  California Public Employees' Retirement System (CalPERS), which requires certain

21  administrative review procedures to be exhausted before filing suit.  The Anthem defendants

22  argue that the Hospitals did not exhaust these administrative procedures, so this court does not

23  have jurisdiction over any of Patient #3's claims.  Additionally, it argues that venue is improper

because the exclusive venue for CalPERS claims is the California Superior Court. The Hospitals respond that these arguments are based on the Anthem defendants' exhibits, which it urges me not to consider. The Anthem defendants reply that I do not have jurisdiction over the claims involving Patient #3 because remedies are not exhausted, there is no federal question jurisdiction because this is not an ERISA claim, and there is no diversity jurisdiction. They also argue that the Hospitals have acquiesced to their argument that this case must be brought in California Superior Court by not responding to it.

As explained above, I am not considering the Anthem defendants' exhibits at this stage. So, viewing the facts in the light most favorable to the Hospitals, the Hospitals have plausibly stated that Patient #3's claims are governed by ERISA, there is federal question jurisdiction, and this is a proper forum. ECF No. 14 at 5, 13. The Hospitals have not acquiesced to the Anthem defendants' arguments because they argue that the defendants' arguments are based on exhibits which they request that I not consider. The defendants ultimately may be correct that Patient #3 is covered by the CalPERS plan the Anthem defendants submit, so this would be the improper venue and it is unclear if jurisdiction would exist. However, I do not consider those arguments at this stage, although I encourage the parties to resolve these issues expeditiously so that the matter can proceed in the proper court.

### e. *Patient # 4 (G.H.)*

The Anthem defendants move to dismiss the claims the Hospitals bring on behalf of Patient #4, arguing that Patient #4's plan requires mandatory arbitration of any disputes. The Hospitals argue that the Anthem defendants' argument is based on extrinsic evidence, which it urges me not to consider. It also argues that the Anthem defendants waived their right to compel arbitration by filing a motion to dismiss instead. The Anthem defendants reply that they have

not waived their right to compel arbitration, but rather are moving to dismiss for improper venue based on the arbitration clause.

The Anthem defendants have not sustained their burden because I do not consider the documents attached to the motions to dismiss for the reasons already stated. If the exhibit the Anthem defendants hold out to be Patient #4's health plan turns out to be, jurisdiction may be improper. I cannot make that determination at this time, but I encourage the parties to resolve this issue expeditiously so the claim can proceed in the proper forum.

**III.    Conclusion**

I THEREFORE ORDER that Keenan & Associates, Blue Cross of California and Anthem Blue Cross Life and Health Insurance Company's motions to dismiss **(ECF Nos. 23; 37) are granted in part and denied in part as set forth in this order.**

DATED this 23rd day of August, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE